UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOAO M. DACOSTA, THE ESTATE OF EMILY DACOSTA, on behalf of themselves and all other so similarly situated, | : : : : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No.:  1:15-cv-00542 |
| | : | |
| NATIONSTAR MORTGAGE, LLC, and FEDERAL NATIONAL MORTGAGE ASSOCIATION, | : : : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS *SECOND AMENDED CLASS ACTION COMPLAINT***

Joseph A. Farside, Jr. (#7559)
Benjamin R. Davis (#8260)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903-2499
401-274-9200
401-276-6611 (fax)
joseph.farside@lockelord.com
benjamin.davis@lockelord.com

Donald E. Frechette
LOCKE LORD LLP
20 Church Street, 20th Floor
Hartford, CT  06103
Telephone:  860-525-5065
Facsimile:   860-527-4198
donald.frechette@lockelord.com
Admitted *pro hac vice*

Attorneys for Defendants Nationstar Mortgage LLC
and Federal National Mortgage Association

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

FACTS ......................................................................................................................... 1

    A.    The *Mediation Statute* ............................................................................ 1

    B.    The Purported Class Plaintiffs' Factual Allegations................................... 3

    C.    Plaintiffs' Sweeping Claims for Relief ..................................................... 5

STANDARD OF REVIEW ........................................................................................... 7

ARGUMENT ............................................................................................................... 8

    A.    COUNT I FAILS FOR LACK OF JURISDICTION ................................. 8

    B.    COUNTS I, II, AND III, TO THE EXTENT THEY SEEK INJUNCTIVE
        RELIEF, ARE ALL RENDERED MOOT BY THE JULY 2015 AMENDMENT
        TO THE *MEDIATION STATUTE* AND ALSO FAIL FOR PRUDENTIAL
        MOOTNESS ............................................................................................ 9

        1.    Mootness Precludes a Live or Active "Case or Controversy" ........ 9

        2.    Lawsuits are Rendered Moot Where a Subsequent Statutory
               Amendment Expressly Strips Away the Relief Sought ................ 11

        3.    Plaintiffs' Injunction Request is Moot Because the *Mediation
               Statute* No Longer Affords Plaintiffs a Pre-Foreclosure Notice of
               Mediation Conference................................................................... 12

        4.    Plaintiffs' Vague Insistence on a Second "Opportunity" at
               Foreclosure Cannot Defeat the Mootness Defense ...................... 14

        5.    Plaintiffs Have No Claim for Monetary Damages....................... 15

        6.    Plaintiffs Have No Claim for Punitive Damages ......................... 16

        7.    The Prudential Mootness Doctrine Separately Requires Dismissal ............ 18

        8.    Non-Compliant Foreclosures are Voidable, Not "Void," as
               Plaintiffs Contend. ...................................................................... 19

    C.    COUNT IV FOR TRESPASS FAILS IN THE ABSENCE OF ALLEGATIONS
        THAT THE LOCKOUT WAS AGAINST REPRESENTATIVE PLAINTIFFS'
        WILL AND BECAUSE, IN A TITLE THEORY STATE, A MORTGAGEE
        CANNOT COMMIT TRESPASS ONCE A MORTGAGOR DEFAULTS. ........... 19

        1.    The Basic Elements of Trespass are Lacking .............................. 19

        2.    No Trespass Claim in a Title-Theory State.................................. 20

CONCLUSION................................................................................................................ 24

## INTRODUCTION

The *Second Amended Class Action Complaint* ("**Complaint**" or "**Compl**.") should be dismissed because it has not been properly filed, is moot, and does not state a claim.  More particularly, this is a post-foreclosure attempt to obtain new foreclosures for all purported class members, with such new foreclosures to be preceded by a notice of mediation conference from the foreclosing lender/servicer.  But the *Complaint* entirely fails to account for a material change in the operative statute that became effective in July 2015, which clarified that no pre-foreclosure notice of mediation conference is required to be sent to a borrower whose mortgage loan was in default prior to May 16, 2013.  All members of the purported class fall into that category.  Consequently, even if plaintiffs were to obtain new foreclosures, those revived proceedings would *not* include the notice of mediation conference that they seek by way of this lawsuit.  The unavailability of that relief makes this lawsuit moot.  Plaintiffs also have no valid claim for monetary relief and thus have not suffered cognizable damages.  Finally, Plaintiffs' fail to allege a legally cognizable claim for trespass because they concede they were in default at the time of the purported trespass.  The *Complaint* should thus be dismissed.

## FACTS

**A.** **The *Mediation Statute*.**

The *Complaint* is exclusively founded on three iterations of *R.I. Gen. Laws* § 34-27-3.2 ("**Mediation Statute**").  When enacted in 2013, the *Mediation Statute* required certain lenders/servicers to notify certain borrowers of the opportunity for a mediation conference with the lender/servicer and a HUD-approved mediation coordinator prior to the commencement of foreclosure.[1]  *See* 2013 *R.I. Pub. Laws*, ch. 325, § 1, eff. Sept. 13, 2013, *amended by* 2014 *R.I.*

---

[1] The mediation process itself is governed by *R.I. Gen. Laws* § 34-27-3.2 (f)-(j).  While that statute spells out certain mediation procedures, and specifies when a foreclosure can be

1

*Pub. Laws,* ch. 543, § 1, attached as **Exhibit A**.  The original version of the *Mediation Statute* exempted loans in default prior to May 16, 2013.  *R.I. Gen. Laws* § 34-27-3.2 (e) (2013).

The *Mediation Statute* was first amended in July 2014, effective October 6, 2014.  *See* 2014 *R.I. Pub. Laws*, ch. 543, § 1, eff. Oct. 6, 2014, *amended by* 2015 *R.I. Pub. Laws,* ch. 147, § 1; 2015 *R.I. Pub. Laws*, ch. 155, § 1, attached as **Exhibit B**.  The 2014 amendment: (1) imposed monetary penalties against lenders/servicers for noncompliance; and (2) removed the exemption for mortgages in default as of May 16, 2013.  *R.I. Gen. Laws* § 34-27-3.2 (d) (2014); *Fontaine v. US Bank Nat'l Ass'n*, C.A. No. PC 2015-0216, 2015 WL 2449536, at *3 (R.I. Super. Ct. May 15, 2015) (discussing 2014 amendment).  The 2014 amendment also substantially restricted claims under the statute by (1) imposing a one-year statute of limitation from the date of publication of the first foreclosure notice; and (2) requiring any claimant to first record a notice of *lis pendens* and then both file and serve a complaint within the limitations period.  *R.I. Gen. Laws* § 34-27-3.2 (p) (2014).  In its totality, the 2014 amendment confirmed that a violation of the statute would not invalidate a foreclosure until entry of a judgment to that effect.

The *Mediation Statute* was amended again effective early July 2015.  *See* 2015 *R.I. Pub. Laws,* ch. 147, § 1, eff. July 2, 2015; 2015 *R.I. Pub. Laws*, ch. 155, § 1, eff. July 9, 2015[2] (codified as amended at *R.I. Gen. Laws* § 34-27-3.2 (2016)), attached as **Exhibits C** & **D**.  The 2015 amendment, *inter alia*, restored the exemption for loans in default prior to May 16, 2013, and changed the word "void" in § 34-27-3.2 (m) to "voidable" to confirm that noncompliant

---

commenced, it likewise makes clear that the mortgagee is not required to offer a modification of the relevant loan's terms.  *See id.*

[2] While the precise effective date is immaterial for purposes of this motion, the senate version of the 2015 amendment was transmitted to the governor on June 24, 2015, while the house version was transmitted on July 1, 2015.  The governor failed to veto either of the identical amendments, thus resulting in respective effective dates of July 2, 2015 and July 9, 2015.

2

foreclosures were subject to invalidation only by way of a judgment after the filing of a procedurally compliant and timely lawsuit. *R.I. Gen. Laws* § 34-27-3.2 (2016).

**B.     The Purported Class Plaintiffs' Factual Allegations.**[3]

The purported class plaintiffs (sometimes collectively, "**Plaintiffs**") filed this suit on December 2, 2015, *see Class Action Complaint* (the "*Original Complaint*"), attached as **Exhibit E** (without exhibits thereto, which may be found in Dkt. No. 3 (State Court Record)). Thereafter, on December 3, 2015, representative plaintiffs recorded a related notice of *lis pendens*. *See Notice of Lis Pendens*, attached as **Exhibit F**. Plaintiffs are former owners of Rhode Island mortgaged properties. (*Compl.* ¶ 2.) Each of their respective loans went into default prior to May 16, 2013. (*Id.*, which expressly references *Exhibits* 2-81 attached to the *Original Complaint*).[4] Plaintiffs' properties were allegedly sold without the notice required by the 2014 amendment, which was in effect from October 6, 2014 to July 2, 2015 ("**Non-Exempt Period**").[5] (*Compl.* ¶ 2.)

---

[3] Defendants reserve all of their right to challenge the validity of the purported class in this matter, and nothing herein is intended as a concession that any such purported class is valid.

[4] The *Complaint* references the exhibits that were physically attached to the *Original Complaint* but not subsequent iterations. Each exhibit contains an "*Affidavit of Exemption*" (or its equivalent) averring that the loan at issue was in default prior to May 16, 2013. The content of those affidavits are not contradicted by the *Complaint*. This Court may consider these documents because Plaintiffs attached them to the *Complaint* and because they are public records. *See Lister v. Bank of Am., N.A.*, 790 F.3d 20, 22 n.2 (1st Cir. 2015) (district court acted properly in examining land records referred to in complaint); *Miss. Pub. Emp. Ret. Sys. v. Boston Scientific Corp.*, 523 F.3d 75, 86 (1st Cir. 2008) (court may consider documents the authenticity of which are not disputed by the parties, official public records, documents central to plaintiffs' claim, and documents referred to in complaint).

[5] Plaintiffs' exhibits reveal that many of the mortgages at issue were foreclosed outside of the Non-Exempt Period and, thus, the same were wholly compliant with the *Mediation Statute*. Plaintiffs' counsel "admits that after further research conducted after the filing of this complaint [Plaintiffs' counsel] discovered that some of the deeds that were attached as exhibits to this complaint were for foreclosure that were initiated after the statute was amended on July 9, 2015 and are thus valid." *Memorandum of Law in Support of Plaintiffs' Opposition to*

Plaintiffs have identified defendants Nationstar Mortgage LLC ("**Nationstar**") and Federal National Mortgage Association ("**Fannie Mae**") (collectively, "**Defendants**") as responsible for those allegedly improper foreclosures.  They assert that such foreclosures were completed without affording them the required notice of mediation conference, thus allegedly depriving them of the opportunity to explore loss mitigation options with the foreclosing lender/servicer.  (*Compl*. ¶ 62.)  Plaintiffs ask that their respective foreclosures be declared invalid and initiated anew, but this time with pre-foreclosure notices of mediation conference.  (*Id.* ¶ 63.)  Plaintiffs claim that Defendants failed to notify them that Defendants "could not foreclose . . . without first participating in a mediation conference" as required by the *Mediation Statute*.  (*Id.* ¶ 25.)  They also assert that the failure to send the mediation notices cost them "opportunities to rectify their situations through loss mitigation and mediation of their mortgage delinquencies," and that such failures are "***the direct cause of the harms alleged herein***." (*Id.* ¶¶ 41, 62, 69) (emphasis added).

It is noteworthy that representative plaintiffs concede that they actually did participate in this Court's special master mediation program in a prior lawsuit, *Memorandum of Law in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss* ("***Opp.***") at p. 2), and that, after the parties made several attempts to resolve the matter, the special master released the case back to the docket.  *Id.; Recommendation Relative to Removal of Certain Mortgage Cases from the Docket of the Special Master, In re: Mortg. Foreclosure Cases, Misc. No. 11-mc-88-M-LDA*, (June 19, 2014) attached hereto as **Exhibit G**.  Thus, there is no dispute that the representative plaintiffs have already participated in mediation notwithstanding the *Mediation Statute*.

---

*Defendants' Motion to Dismiss* at p. 4.  Plaintiffs nevertheless reference the same 80 foreclosures in their newly amended *Complaint*.  The issue is irrelevant here, however, because all of the plaintiffs' claims are moot.

Nevertheless, the *Complaint* contends that the referenced foreclosures are "void," (*Compl.,* ¶¶ 31, 63, 67), and it asks this Court to require Defendants to commence new foreclosures *after* they provide a "proper" notice pursuant to the *Mediation Statute*.[6] (*Id.* ¶¶ 75, 88, 110.) The *Complaint* nowhere alleges that any of the Plaintiffs would have qualified for or accepted any loss mitigation options had they received a pre-foreclosure notice of mediation conference, or even participated in the mediation conference itself.

Finally, representative plaintiffs allege, purportedly on behalf of all Plaintiffs, that "[o]n or about April 1st, 2015, Defendants unlawfully moved out representative plaintiffs' personal belongings and locked out Representative Plaintiffs' [sic] from the subject property thereby unlawfully denying them access and possession of the subject property." (*Id.* ¶ 130.) They make this claim despite that they executed a mortgage ("***DaCosta Mortgage***") which states, among other things,

> If Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect the Lender's interest and rights under this Security Instrument, including protecting and/or assessing the value of the Property and securing and/or repairing the Property.

*DaCosta Mortgage*, ¶ 9, attached hereto as **Exhibit H**.[7]

**C.    Plaintiffs' Sweeping Claims for Relief.**

The *Complaint* contains four counts against both defendants: (1) "Violation of R.I.G.L. § 34-27-3.2" ("Count I") (*id.* ¶¶ 55-80); (2) "Declaratory Judgment and Injunctive Relief" ("Count II") (*id.* ¶¶ 81-97); (3) "Quieting Title Rhode Island General Law § 34-16-5"

---

[6] Foreclosures offending the *Mediation Statute* are actually voidable, not void. *See infra* § B.9.

[7] This Court may consider the *DaCosta Mortgage* because it is referred to it in the *Complaint* and is a public record. *Lister*, 790 F.3d at 22 n.2.

5

("Count III") (*id.* ¶¶ 98-122); and (4) "Unlawful Trespass and Ejectment" ("Count IV") (*id.* ¶¶ 123-138).

In Count I which, again, is solely premised on an alleged violation of the *Mediation Statute*, Plaintiffs pursue the following sweeping categories of recourse:

- Declaratory and injunctive relief, described as follows:

  - A declaratory judgment that the subject foreclosures are "void" and that Plaintiffs' mortgage loans be restored to pre-foreclosure status (*id.* ¶¶ 73-74); and

  - An injunction barring Defendants from recommencing the subject foreclosures until they provide the Plaintiffs with notice of the potential for a mediation conference "pursuant to" the *Mediation Statute*. (*Id.* ¶ 75).

- Monetary Damages, described as follows:

  - "[L]oss of equity in [Plaintiffs'] homes, legal defense of foreclosure and eviction, and moving and relocation expenses" (*id.* ¶ 70);

  - "[G]eneral damages such as loss of property interest, loss of [Plaintiffs'] homes, lost opportunities to rectify [Plaintiffs'] situations through loss mitigation and mediation of their mortgage delinquencies" (*id.* ¶ 71);

  - "[A]ctual, exemplary, punitive, and monetary damages" for violation of the *Mediation Statute* (*id.* ¶¶ 72-74); and

  - "[C]ancellation of costs and fees assessed to their accounts for wrongful foreclosure, together with additional damages." (*Id.* ¶ 76.)

Counts II and III seek virtually identical categories of relief. (*Id.* ¶¶ 86-93, 109-122.)

Newly added Count IV for trespass is also premised on an alleged violation of the *Mediation Statute* and asserts that Defendants locked out representative plaintiffs from their property in reliance on an invalid foreclosure. (*Id.* ¶ 130.) The *Complaint* does not allege that the referenced lockout occurred prior to the date when representative plaintiffs voluntarily

6

abandoned their property or otherwise consented to entry.   In any event, Count IV seeks the following monetary damages:

- o "[L]oss of equity in their homes, legal defense of foreclosure and eviction, and moving and relocation expenses as well as use and occupancy for the fair market value of the properties that were wrongfully denied possession" (*id*. ¶ 133);

- o "[L]oss of property interest, loss of their homes, lost opportunities to rectify their situations through loss mitigation and mediation of their mortgage delinquencies" (*id*. ¶ 134);

- o "[C]ompensatory damages against the Defendants for their wrongful slander of title and abuse of process" (*id*. ¶ 136); and

- o Punitive damages (*id*. ¶ 135).

Because Plaintiffs' request for injunctive relief has been mooted by the *Mediation Statute's* 2015 amendment, because monetary damages are not available as a matter of law, and because the trespass claim fails to state a claim, the *Complaint* should be dismissed.

## STANDARD OF REVIEW

To survive a motion to dismiss under *Fed. R. Civ. P.* 12 (b) (6), Plaintiff must allege a "plausible entitlement to relief." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, this Court must, for purposes of deciding this motion, accept as true all of the *Complaint's* allegations. *Id*. This deference does not apply to legal conclusions, however. *Id*. (quoting *Twombly*, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"). Dismissal of the complaint is appropriate where it does not set forth sufficient factual allegations "respecting

7

each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted).

## ARGUMENT

Count I is improperly pled under the *Mediation Statute* and thus jurisdiction is lacking. Also, the *Complaint's* quest for injunctive relief is moot, because forcing the foreclosures to be recommenced would not, as Plaintiffs desire, result in new mediation conference notices in light of the 2015 amendment to the statute. This Court thus cannot afford "effective relief" to Plaintiffs. Further, monetary damages are unavailable under the *Mediation Statute* and punitive damages are unavailable as a matter of law so Plaintiffs' moot claims cannot be revived. Finally, the only other claim that could potentially support money damages (trespass) fails as a matter of law. As a result, the *Complaint* should be dismissed in its entirety.

## A.   COUNT I FAILS FOR LACK OF JURISDICTION.

A person seeking to challenge a foreclosure under the *Mediation Statute* has one year from the date that the first notice of foreclosure was published in the newspaper to both (1) file a complaint and (2) file a notice of *lis pendens*. *R.I. Gen. Laws* § 34-27-3.2 (p) (2016). Moreover, the complaint must be filed "on the same day as the notice of lis pendens or within seven (7) days ***thereafter***." *Id.* (emphasis added). "Failure to file a complaint, record the notice of lis pendens, and serve the mortgagee within the one-year period ***shall preclude said mortgagor . . . from subsequently challenging the validity of the foreclosure***." *Id.* (emphasis added).

Here, Count I falters because Plaintiffs failed to fulfill the statutory prerequisites for suit and jurisdiction is thus lacking. In particular, Plaintiffs filed their *Original Complaint* on December 2, 2015, **Exhibit E**, and their notice of *lis pendens* one day ***later***. **Exhibit F**. Thus, the complaint was untimely because the statute does not allow it to be filed ***prior*** to recordation of the *lis pendens*. Instead, the complaint must be filed the same day as the *lis pendens* or within

8

seven days thereafter.   Plaintiffs' failure to timely file the complaint strips the Court of jurisdiction over it.  *R.I. Gen. Laws* § 34-27-3.2 (p).

Furthermore, Plaintiffs cannot cure this defect regarding Count I.   Representative plaintiffs allege that the first notice of foreclosure was published on February 17, 2015.   (*Compl.* ¶ 24).  The one-year limitations period set forth in § 34-27-3.2 (p) has thus now passed.

**B.     COUNTS I, II, AND III, TO THE EXTENT THEY SEEK INJUNCTIVE RELIEF, ARE ALL RENDERED MOOT BY THE JULY 2015 AMENDMENT TO THE *MEDIATION STATUTE* AND ALSO FAIL FOR PRUDENTIAL MOOTNESS.**

Counts I, II and III all seek injunctive relief voiding the subject foreclosures, requiring a new foreclosure preceded by a mediation notice, and removing an alleged cloud on Plaintiffs' title.  The 2015 amendment to the *Mediation Statute* has, however, mooted those claims.  That the *Complaint* also seeks money damages under these counts cannot save those claims from mootness where money damages are not available as a matter of law under any of those counts.

### 1.     Mootness Precludes a Live or Active "Case or Controversy."

Federal courts may only adjudicate live cases or controversies.  *U.S. Const*. art. III, § 2, cl. 1.   In the absence of an actual pending case or controversy, a federal court lacks subject matter jurisdiction.  *Nash v. CVS Caremark Corp.*, 2009 WL 5863463, at *2 (D.R.I. Nov. 13, 2009).  "No justiciable controversy is presented when the question sought to be adjudicated has been mooted" and "[m]oot cases must be dismissed for lack of jurisdiction." *Bond v. Fleet Bank,* 2002 WL 373475, at *2 (D.R.I. Feb. 21, 2002).

A case must be dismissed as moot when the Court "is powerless to award any meaningful relief."  *Narragansett Indian Tribe of R.I.  v. Chao*, 248 F. Supp. 2d 48, 50 (D.R.I. 2003); *see DeMarco v. Travelers Ins. Co.*, 102 A.3d 616, 622 (R.I. 2014) (if judgment "would fail to have a practical effect on the existing controversy, the question is moot, and [the Court] will not render an opinion on the matter").  "In other words, if a court may not provide any effectual relief to the

9

potentially prevailing party, the case is moot." *Matt v. HSBC Bank USA, N.A.*, 783 F.3d 368, 372 (1st Cir. 2015) (quotation omitted); *see Am. Civil Liberties Union of Mass. v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 53 (1st Cir. 2013) (case moot when court cannot provide "meaningful relief" to allegedly aggrieved party).

A claim is moot when the relief sought cannot be obtained. *See, e.g., Am. Civil Liberties Union of Mass*, 705 F.3d at 53 (contract challenge moot upon contract's expiration); *State v. Isom*, 62 A.3d 1120, 1124 (R.I. 2013) (completion of sentence renders moot appeal from revocation of term of supervised release); *U.S. Bank Nat'l Ass'n v. Lopez*, 47 A.3d 343, 344 (R.I. 2012) (eviction appeal moot after tenants vacated); *In re Westerly Hosp.*, 963 A.2d 636, 638 (R.I. 2009) (release of medical records rendered moot claim for injunction to prohibit such release).

The concept of mootness has been expounded upon in the foreclosure context. *See, e.g., Nash v. GMAC Mortg., LLC*, 2011 WL 2470645, at *13 (D.R.I. May 18, 2011) (rescinding notice of foreclosure sale mooted suit to enjoin foreclosure), *report and recommendation adopted*, 2011 WL 2469849, at *1 (D.R.I. June 20, 2011); *Daneau v. CitiMortgage, Inc.*, No. CA No. 218-2015-CV-00686 (N.H. Super. Ct. Sept. 24, 2015)[8] (because only relief sought was injunction against foreclosure, lawsuit rendered moot once foreclosure occurred).  For example, the sale of foreclosed property to a third party typically "precludes effective relief" sought *via* an injunction "because, where the property has been sold and [defendant bank] no longer has any right to possess it, it is not possible for the court to return the property to the plaintiff." *Smith v. Wells Fargo Bank*, 991 A.2d 20, 25 (D.C. 2010) (quotation omitted); *see In re Van Daam*, 1992 WL 12014468, at *2 (D.R.I. Mar. 31, 1992) ("Since, the property has been sold at a foreclosure sale, [plaintiff's appeal of a denial of a motion to stay the foreclosure] is now moot.  To hold

---

[8] Attached hereto as **Exhibit I**.

otherwise would deprive foreclosure sales of finality thereby creating uncertainty as to the status

of the title to property acquired at such sales."); *Sananap v. Cyfred, Ltd.*, 2009 Guam 13 (Guam

2009) (appeal mooted by sale of property); *Evans v. Family Sav. & Loan Ass'n of Va.,* 481 A.2d

1309, 1310 (D.C. 1984) (*per curiam*) (same).

> **2.  Lawsuits are Rendered Moot Where a Subsequent Statutory Amendment Expressly Strips Away the Relief Sought.**

Mootness also applies when a statute is later amended in a way that precludes the relief

sought by the complaint.  *See, e.g., Pine Tree Med. Assoc.'s v. Sec'y of Health & Human Servs.*,

127 F.3d 118, 121 (1st Cir. 1997) (challenge to agency's issuance of guidelines without

notice/comment period rendered moot by statutory amendment abrogating notice/comment

requirement because "were the [guidelines] struck down, [the plaintiff] would find itself ***no***

***closer to its desired end***") (emphasis added); *Beacon Prods. Corp. v. Reagan,* 814 F.2d 1, 3 (1st

Cir. 1987) (amendment mooted constitutional challenge to prior version of statute); *see also*

*Gonzalez v. Village of West Milwaukee*, 671 F.3d 649, 654-55 (7th Cir. 2012) (suit to invalidate

statute treating the open carrying of a firearm as disorderly conduct mooted by legislation

declaring that open carry is not disorderly conduct under state law or any local ordinance); *Fla.*

*Ass'n of Rehab. Facilities, Inc. v. Dep't of Health & Rehab. Servs.--State of Fla.*, 526 F.3d 685,

690 (11th Cir. 2008) (action to enforce statute was moot where statute had been repealed and the

defendants had complied with successor statute); *State of Vt. v. Goldschmidt*, 638 F.2d 482, 485

(2d Cir. 1980) (passage of new statute that superseded highway aid allocation formula mooted

claim based on old statute); *Dolock v. Avedisian*, 2012 WL 3612317, at \*21 (R.I. Super. Ct. Aug.

16, 2012) (repeal of wind ordinance mooted challenge to same).  As described below, this is

exactly what has occurred here.

**3.      Plaintiffs' Injunction Request is Moot Because the *Mediation Statute* No Longer Affords Plaintiffs a Pre-Foreclosure Notice of Mediation Conference.**

Plaintiffs' claim for an injunction is moot because they seek that which is no longer available.  Simply stated, even if their foreclosures were invalidated and required to be commenced anew, Plaintiffs would ***not*** be entitled to mediation conference notices because their loans are all exempt.  This outcome results from a prospective application of the *Mediation Statute* and not an instance of retroactive application of a statute which might, under certain circumstances, trigger constitutional scrutiny.

Whether Counts I-III are moot turns on whether the relief sought in the *Complaint* remains available.  *Matt*, 783 F.3d at 372.  As the *Complaint* itself makes clear, the thrust of Plaintiffs' claims is that the Defendants' failure to send mediation conference notices cost them the "opportunit[y] to rectify their situations through loss mitigation and mediation of their mortgage delinquencies," and that such failure was the "***direct cause***" of their harms.  (*Compl*. ¶¶ 40, 42, 69) (emphasis added.)  The *Complaint* thus asserts that such foreclosures are "void" (*id*. ¶¶ 31, 67), and Defendants should be required to commence new foreclosures after a "proper notice [of the mediation option] is made" pursuant to the *Mediation Statute*, (*id*. ¶¶ 75, 110).[9]

The current version of the *Mediation Statute* does not provide the relief sought. Specifically, it would not require that mediation conference notices be sent to ***any*** of the Plaintiffs in order for new foreclosures to be commenced.  Simply, the 2015 amendment restored the statute's original exemption for mortgages in default prior to May 16, 2013.  Indeed, the legislative "summary" of the legislation that resulted in the 2015 amendment states that it "reinstates the language and legislative intent set forth in the original legislation that the

---

[9]   While Plaintiffs also ask for monetary damages, those claims cannot be supported by the *Mediation Statute* and must also be dismissed.  *See infra* § B.5.

mediation law was intended to be prospective . . . ." 2015 *R.I. Sen. Bill No.* 581 (March 3, 2015).[10]  There is no doubt, therefore, that the 2015 amendment was meant to cure an oversight resulting from the 2014 amendment, namely the 2014 amendment's unintentional expansion of the *Mediation Statute's* applicability to mortgages that were in default prior to May 16, 2013.  *Id.*

The *Mediation Statute* presently does not apply to mortgages in default "on or before May 16, 2013."  *R.I. Gen. Laws* § 34-27-3.2 (o) (2016).  Plaintiffs have themselves conceded that every one of their mortgages was in default prior to that date.  *See supra* footnote 4. Consequently, the *Mediation Statute* in its present form would not require mediation conference notices to be sent to **any** of the Plaintiffs before commencement of any newly ordered foreclosure, as Plaintiffs request.

In other words, the specific relief sought by Plaintiffs – an injunction forcing a new, corrective foreclosure that includes a mediation conference notice – is impossible for this Court to provide.  Instead, any "new" foreclosure will afford Plaintiffs only the exact same type of pre-foreclosure notice that was sent to them as a prelude to their original foreclosures.   This fact deprives the Court of the ability to provide Plaintiffs with "meaningful" or "effectual" relief because it brings them no closer to their desired end.  *See Am. Civil Liberties Union of Mass.,* 705 F.3d at 53; *Fla. Ass'n of Rehab. Facilities, Inc.*, 526 F.3d at 690.   Requiring a new foreclosure that would be identical to the old foreclosures is not "effective relief;" it is the quintessence of mootness.[11]  *See Smith*, 991 A.2d at 25 (foreclosure sale generally moots claim

---

[10]   Attached hereto as **<u>Exhibit J</u>**.

[11]   There is an exception to the mootness doctrine for matters considered to be "capable of repetition yet evading review".  *See In re Briggs*, 62 A.3d 1090, 1097 (R.I. 2013).  This case, however, presents the opposite scenario.  This is not an instance where the representative plaintiffs' claims are mooted but other plaintiffs may be subjected to future actionable conduct.  *See Caroline T. v. Hudson School Dist.*, 915 F.2d 752, 757 (1st Cir. 1990) (potential for moot issue to arise in future invalidated mootness defense).  Rather, the claims

for injunctive relief); *Pine Tree Med. Assoc.'s*, 127 F.3d at 121 (statutory amendment rendered case moot); *Beacon Prods. Corp.,* 814 F.2d at 3 (same); *Dolock*, 2012 WL 3612317, at *21 (same).  For this reason, Counts I-III should be dismissed.

> **4.     Plaintiffs' Vague Insistence on a Second "Opportunity" at Foreclosure Cannot Defeat the Mootness Defense.**

Plaintiffs' claim that they "lost opportunities" for potential loss mitigation in the absence of the requisite mediation notices is contradicted by their papers and cannot justify a redundant foreclosure.   Representative plaintiffs concede that they participated in this Court's special master program as a result of their very own 2013 lawsuit.  (*Opp.* at p. 2.)  They further concede that the parties reached an impasse in 2014 after they made "several attempts at resolving the matter."  (*See id.*)   Thus, the purpose of the *Mediation Statute*, as expressed by the General Assembly, of providing "early" mediation, was substantively fulfilled through Plaintiffs' participation in the special master process.  *See R.I. Gen. Laws* § 34-27-3.2 (b) (2014).

Nowhere does the *Complaint* allege that Plaintiffs would have participated in a mediation conference had they received the mediation notice.  *R.I. Gen. Laws* § 34-27-3.2 (g) (2016) (mortgagee deemed to have satisfied the statute after two unsuccessful attempts by the mediation coordinator to contact the mortgagor).   Moreover, the *Mediation Statute* in no way requires a loan modification or any similar favorable outcome for a mortgagor.   All that is required is a "good faith effort" at renegotiating the loan in which the mortgagee has broad discretion to determine that a modification would not be "economically feasible" under the circumstances. *R.I. Gen. Laws* § 34-27-3.2 (h) (2016).   Thus, any new opportunity at loss mitigation, more than three years after Plaintiffs stopped making any payments and after the parties reached an impasse before the Special Master, would be futile.   Accordingly, any suggestion that implausible and

---

of all potential plaintiff mortgagees have been mooted as a result of the 2015 amendment which deprived the Court of the ability to provide plaintiffs with "meaningful" relief.

speculative (at best) opportunities for yet further loss mitigation options saves them from a mootness argument rings hollow.

### 5. Plaintiffs Have No Claim for Monetary Damages.

Plaintiffs also have no claim for monetary damages which might save their claims from a mootness argument. *Cf. Pineiro v. Gemme*, 937 F. Supp. 2d 161, 170 (D. Mass. 2013) (availability of money damages meant claims had not been rendered moot); *Nat'l Iranian Oil Co. v. Mapco Int'l, Inc*., 983 F.2d 485, 489 (3d Cir. 1992) ("A case is saved from mootness if a *viable* claim for damages exists.") (emphasis added).

First, the *Mediation Statute* does not provide for monetary damages, and money damages are never presumed to have been intended by the General Assembly. "To inject a judicial remedy . . . into a statute that plainly does not contain a remedy, particularly when there is no evidence to suggest that the Legislature had intended to create a cause of action, would be interpretation by amendment." *Bandoni v. State*, 715 A.2d 580, 585 (R.I. 1998) (quotation omitted). "[I]t is not the function of this Court to act as a super legislative body and rewrite or amend statutes already enacted by the General Assembly." *Id.* And, of course, statutes that create rights in derogation of common law must be strictly construed, and nothing in the *Mediation Statute* even hints at the prospect of damages. *Sindelar v. Leguia,* 750 A.2d 967, 970 (R.I. 2000) (*per curiam*) (refusing to create "absentee parent" exception to recovery of wrongful death proceeds where *Wrongful Death Act* was silent); *Prov. J. Co. v. Rodgers,* 711 A.2d 1131, 1134 (R.I. 1998) (legislation in derogation of common law subject to strict construction).

Additionally, when "a statute expressly provides [a] remed[y], courts must be extremely reluctant to expand its sweep by augmenting the list of prescribed anodynes." *Dowdell v. Bloomquist*, 847 A.2d 827, 836 (R.I. 2004). "Instead, a court should ordinarily conclude that the legislature provided precisely the redress it considered appropriate, and should not expand the

15

remedies available." *Id.* (quotations omitted).   Even if a statutory remedy appears inadequate, that fact "would not warrant a court's awarding relief that the General Assembly declined to make available to injured parties when enacting the statute in question." *Id.* at 834.

Here, by its express terms, the 2014 amendment provided only two remedies.   First, that certain foreclosures could be deemed "void" if suit was properly filed within one year of publication and a judgment obtained, *R.I. Gen. Laws* § 34-27-3.2 (m) (2014), and second, monetary penalties payable to the mediation coordinator for deposit into the state's general fund. § 34-27-3.2 (d) (2014).[12]   Thus, the General Assembly specifically opted not to provide borrowers with a private cause of action for monetary damages and, thus, none exists. Moreover, a quiet title action under *R.I. Gen. Laws* § 34-16-1, *et seq.* (such as Count III) is an action for declaratory relief only.   *See id.*; *Costa v. Silva*, 996 A.2d 607, 612 (R.I. 2010).   Thus, Count III does not independently permit monetary damages that would potentially affect the mootness of Plaintiffs' claims.

Accordingly, because monetary damages are simply unavailable under the *Mediation Statute* or the quiet title statute, they cannot dodge a mootness challenge to Counts I, II or III.

### 6.   Plaintiffs Have No Claim for Punitive Damages.

The unavailability of punitive damages clinches the mootness defense.   *Boston Prop. Exch. Transfer Co. v. Iantosca*, 720 F.3d 1, 12 (1st Cir. 2013) (failure to allege cognizable damages is grounds for dismissal).   "[P]unitive damages are severely restricted under Rhode Island law," and "will be satisfied only in instances wherein a defendant's conduct requires

---

[12] The statute does not even create a cause of action for the state to recover this penalty.  Rather, the penalty must ordinarily be recovered by the mediation coordinator before a certificate of compliance is issued or the mortgagee becomes "subject to administrative action pursuant to Titles 19 and 42 of the Rhode Island General Laws and/or any relevant regulation promulgated pursuant thereto." *R.I. Admin. Code* §§ 11-2-5:7 & 11-2-5:8.

deterrence and punishment over and above that provided in an award of compensatory damages." *Mark v. Congreg. Mishkon Tefiloh*, 745 A.2d 777, 779 (R.I. 2000) (citations omitted).

In order to recover punitive damages, the plaintiff has the burden of producing "evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, ***as amount[s] to criminality***, which for the good of society and warning to the individual, ought to be punished." *Johnson v. Johnson*, 654 A.2d 1212, 1217 (R.I. 1995) (emphasis added) (quotation omitted). The Supreme Court of Rhode Island "consistently has looked askance at punitive damages except in egregious circumstances." *Fenwick v. Oberman*, 847 A.2d 852, 854 (R.I. 2004); *see Carlsten v. The Widecom Grp., Inc.*, 2003 WL 21688263, at *17 (R.I. Super. Ct. July 1, 2003); *Piccione v. High Ridge Condo. Ass'n, Inc.*, 2009 WL 434183, at *12 (R.I. Super. Ct. Jan. 9, 2009) (no punitive damages absent evidence defendant acted maliciously or with evil intent).

Here, nothing alleged in the *Complaint*, even when construed most favorably to the Plaintiffs, remotely approaches the requisite level of "willfulness" or "wickedness" (in the tort context) or "egregious circumstances" (in the context of a contract claim). Rather, Plaintiffs merely allege that the foreclosures occurred in the absence of a pre-foreclosure mediation conference notice (and where the initial version of the statute exempted these particular loans). Even after the 2014 amendment removed the exemption, the foreclosures conducted during that Non-Exempt Period still complied with a Department of Business Regulation rule, which remained in place after October 2014 and continued to exempt these particular loans. *See R.I. Admin. Code* § 11-2-5:5 (2014). In other words, at worst, the foreclosures were completed in reliance on an agency rule that was presumed to be valid until abrogated by *Fontaine*. 2015 WL 2449536, at *3. These circumstances simply cannot support a punitive damages claim.

Accordingly, Plaintiffs cannot avoid mootness by including a claim for punitive damages

because such relief is simply unavailable to them under the statute or Rhode Island law.

### 7.     The Prudential Mootness Doctrine Separately Requires Dismissal.

The prudential mootness doctrine applies where, as here, a plaintiff seeks injunctive or declaratory relief and it is unlikely that the court's granting of that relief will actually relieve the injury.  *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011).  The doctrine is "a facet of equity."  *Penthouse Int'l, Ltd. v. Meese,* 939 F.2d 1011, 1019 (D.C. Cir. 1991).  In such cases, "prudential concerns may militate against the use of judicial power" and call for the court to treat the case as moot for prudential reasons even if it technically has Article III jurisdiction.  *Ali v. Cangemi,* 419 F.3d 722, 724 (8th Cir. 2005).  The Court has ample discretion to refuse to award relief that will be meaningless to the litigant.  *See 281–300 Joint Venture v. Onion,* 938 F.2d 35, 38 (5th Cir. 1991) (dismissing "on prudential grounds" where "there will never be any assets with which to satisfy a judgment"); *Greenbaum v. U.S. Envt'l Prot. Agency,* 370 F.3d 527, 534–35 (6th Cir. 2004) (under prudential mootness, "we decline to reach the specific issue of whether Ohio's NSR program should have been fully approved prior to redesignation as the circumstances have changed, and we can no longer afford petitioners any meaningful relief").

Here, there is no practical purpose to reach the merits of Plaintiffs' claims for injunctive and declaratory relief because the 2015 amendment to the *Mediation Statute* makes it impossible for them to obtain any effective relief.  *Fed. Deposit Ins. Corp. v. Kooyomjian,* 220 F.3d 10, 14–15 (1st Cir. 2000) (affirming dismissal under doctrine of prudential mootness).  Litigating this matter "would require a needless expenditure of resources by [the defendants], plaintiffs, and the Court, as litigating a trial in which relief is not possible would be a futile act."  *Barrera-Rodriguez v. Westernbank de Puerto Rico*, 2012 WL 8281716, at *4 (D.P.R. Sept. 30, 2012).  Accordingly, Plaintiffs' claims should again be dismissed.

18

8. **Non-Compliant Foreclosures are Voidable, Not "Void," as Plaintiffs Contend.**

Finally, contrary to Plaintiffs' proclamation, foreclosures offending the *Mediation Statute* are not void. They are instead merely voidable because the 2014 amendment imposed a one-year statute of limitation. *R.I. Gen. Laws* § 34-27-3.2 (p) (2014). An action cannot be "void", or a nullity, if it is impervious to challenge after the expiration of a year. To adopt Plaintiffs' position would be to ignore the existence of the *Mediation Statute's* statute of limitations. This apparently erroneous reference to "void" foreclosures was corrected in the 2015 amendment. That amendment changed the word "void" in § 34-27-3.2 (m) to "voidable" to reflect that that non-complying foreclosures were subject to invalidation only by a timely judgment of a court. *R.I. Gen. Laws* § 34-27-3.2 (p) (2016); *see DaPonte v. Ocean State Job Lot, Inc.*, 21 A.3d 248, 251 (R.I. 2011) (courts must construe laws so as to harmonize various provisions); *Martone v. Johnston Sch. Comm.*, 824 A.2d 426, 432 (R.I. 2003) (citations omitted) ("when apparently inconsistent statutory provisions are questioned, every attempt should be made to construe and apply them so as to avoid the inconsistency"). Accordingly, the subject foreclosures are not yet invalid, and the Court may properly dismiss Counts I, II, and III as moot.

C. **COUNT IV FOR TRESPASS FAILS IN THE ABSENCE OF ALLEGATIONS THAT THE LOCKOUT WAS AGAINST REPRESENTATIVE PLAINTIFFS' WILL AND BECAUSE, IN A TITLE THEORY STATE, A MORTGAGEE CANNOT COMMIT TRESPASS ONCE A MORTGAGOR DEFAULTS.**

1. **The Basic Elements of Trespass are Lacking.**

Trespass occurs when a person "intentionally and without consent or privilege enters another's property." *Ludwig v. O'Connell*, 2006 WL 2062133, at *6 (R.I. Super. Ct. July 19, 2006) (quoting *Ferreira v. Strack,* 652 A.2d 965, 969 (R.I. 1995)). To recover for trespass in Rhode Island, a party must show: (1) the adverse party intentionally entered onto the owner's property; and (2) plaintiff had rightful possession thereof. *State v. Verrecchia,* 766 A.2d 377

(R.I. 2001); *Berberian v. Avery,* 205 A.2d 579, 581 (R.I. 1964).   One who has consent or privilege and enters another's property is not a trespasser.   *In re IDC Clambakes, Inc.*, 431 B.R. 51, 58 (Bankr. D.R.I. 2010), *aff'd in part, vacated in part*, 484 B.R. 540 (D.R.I. 2012), *aff'd and remanded*, 727 F.3d 58 (1st Cir. 2013).   "Consent, *in any form*, is fatal to a claim for trespass." *In re IDC Clambakes, Inc.*, 727 F.3d 58, 65 (1st Cir. 2013) (emphasis added).

Here, the *Complaint* fails to allege that representative plaintiffs had rightful possession of (or even occupied) the subject property at the time of entry.   Nor does it allege that entry occurred without privilege or consent.   Thus, because representative plaintiffs fail to allege that they had not voluntarily surrendered or abandoned the subject property at the time of entry and the *Complaint* fails to adequately plead a claim for trespass.   Simply alleging that the trespass was "unlawful" *(Compl. ¶ 131)* is not enough to state a claim.

**2.      No Trespass Claim in a Title-Theory State.**

Even if trespass had been alleged, it would still fail because Rhode Island is a title-theory state, allowing entry by the mortgagee and its agents after a default (as reinforced by the terms of the *DaCosta Mortgage* itself).   "Rhode Island is a title-theory state, in which a mortgagee not only obtains a lien upon the real estate by virtue of the grant of the mortgage deed but also obtains legal title to the property subject to defeasance upon payment of the debt."   *Bucci v. Lehman Bros. Bank, FSB,* 68 A.3d 1069, 1078 (R.I. 2013) (quotation omitted).   "Put another way, the title theory of mortgage law splits the title [to a property] in two parts: the legal title, which becomes the mortgagee's and secures the underlying debt, and the equitable title, which the mortgagor retains."   *Lister v. Bank of Am., N.A.*, 790 F.3d 20, 24-25 (1st Cir. 2015) (quotation omitted).

Rhode Island follows the common-law title-theory rule that a mortgagee is entitled, by

virtue of its legal title, to immediate possession of the premises mortgaged even before default, absent an agreement to the contrary. *Koury v. Sood,* 62 A.2d 649, 652 (R.I. 1948); *see also* 54A *Am. Jur.* 2d *Mortgages* § 142.   Thus, Rhode Island does not recognize an action for trespass when a mortgagee takes possession of the property after default. *See Manville Covering Co. v. Babcock*, 68 A. 421, 424 (R.I. 1907) ("The argument that the complainant as assignee of the mortgagor can have an action at law against the mortgagee for a trespass upon the real estate mortgaged has no foundation in law.").

A more recent line of analogous Alabama cases makes clear that no action for trespass exists in a title theory state against a mortgagee who takes possession upon default, regardless of the validity of the foreclosure.   In *In re Sharpe*, 391 B.R. 117 (Bankr. N.D. Ala. 2008), the court posed the question "[c]an an improperly accelerated mortgage which lead to foreclosure constitute trespass by a mortgagee who failed to properly accelerate the mortgage?"   *Id.* at 158. The court answered in the negative, quoting *Trauner v. Lowrey,* 369 So.2d 531, 534 (Ala. 1979):

> Alabama classifies itself as a title state with regard to mortgages. Execution of a mortgage passes legal title to the mortgagee.  The mortgagor is left with an equity of redemption, but upon payment of the debt, legal title revests in the mortgagor.  The equity of redemption may be conveyed by the mortgagor, and his grantee secures only an equity of redemption.  The payment of a mortgage debt by the purchaser of the equity of redemption invests such purchaser with the legal title.  The equity of redemption in either case, however, is extinguished by a valid foreclosure sale, and the mortgagor or his vendee is left only with the statutory right of redemption.

*Id.* at 158 (citations omitted).

The court also quoted *Moorer v. Tensaw Land & Timber Co.,* 20 So.2d 105, 108 (Ala. 1944): "A mortgage effective at law passes the legal title to the mortgagee, who is entitled to the immediate possession of the land even before default, unless it is provided in it (or by separate

21

instrument) that the possession shall remain in the mortgagor." *Id.* Finally, noting the absence

of Alabama case law directly on point, the court quoted a federal case interpreting Mississippi

law, *Haggart v. Wilczinski,* 143 F. 22, 26 (5th Cir. 1906):

> [T]he mortgagor is the owner of the legal title to the land until a
> valid foreclosure of the mortgage. This is true against everybody,
> but subject to this exception: After breach of the condition of the
> mortgage, the mortgagee may maintain ejectment against the
> mortgagor to recover the mortgaged land as a means of enforcing
> the security. ***It follows, we think, that where a mortgagee obtains
> possession by suit, or under an irregular, or voidable, or void,
> foreclosure, after breach of the condition of the mortgage, he has
> the right to hold possession until his mortgage is paid.*** The
> mortgagor cannot deprive him of possession without first paying
> the debt. We have no reason to doubt that this doctrine prevails in
> Mississippi, although it may be that the mortgagee under such
> circumstances, if sued, in ejectment by the mortgagor, would have
> to resort to a court of equity to preserve his possession till his
> mortgage was paid.

*Id.* at 160 (emphasis added) (citations omitted).  The bankruptcy court then stated that the law in

Alabama as of 2008 was the same – that the defendant had a right to possession of the property

upon the plaintiffs' default.  *In re Sharpe*, 391 B.R. at 161.  "Because it had a right to possession,

it could not be guilty of trespass, whether direct or indirect."  *Id.*

The reasoning of this decision was reaffirmed just last year by the Alabama Supreme

Court.  *U.S. Bank Nat'l Ass'n v. Shepherd*, 2015 WL 7356384, at *10 (Ala. Nov. 20, 2015).

There, the lender took possession, installed new locks, and prevented the borrower from

accessing the property following his default, but prior to the foreclosure sale.  *Id.* at *3.  The

court noted the mortgage provision that "[i]f Borrower fails to perform the covenants and

agreements contained in this security instrument . . . then Lender may do and pay for whatever is

necessary to protect the value of the Property and Lender's rights in the Property.'" *Id.* at *10.

The court found that "[t]his provision surely entails the right to enter and to secure the subject

property." *Id.* The court thus found that the mortgagee could not be liable for trespass (even pre-foreclosure) because it had a right to possession when it changed the locks. *Id.*

New Hampshire, another title theory state, is in accord. It also does not permit a post-foreclosure borrower to maintain an action for trespass even where the foreclosure ***was invalid***. *Bradley v. Wells Fargo Bank, N.A.*, 2014 WL 815333, at *4 (D.N.H. Mar. 3, 2014) (Barbadoro, J.) (emphasis added) (dismissing trespass claim while allowing foreclosure challenge), *on reconsideration on other grounds*, 2014 WL 2106495 (D.N.H. May 20, 2014). These recent cases from fellow title theory states reflect the law in Rhode Island. *See Restatement (Third) of Property-Security (Mortgages)* § 4.1 cmt. a. (1). (1997) (mortgagee in title theory state that takes possession of property following mortgagor's default "not liable to be removed on the basis of trespass or ejectment").

Here, Plaintiffs do not contend they were forcefully evicted. Instead, they merely assert that Defendants secured the subject property following foreclosure. (*Compl.* ¶ 130.) It is undisputed that representative plaintiffs were in default prior to May 2013. (*Id.* ¶ 2.) Furthermore, as in *Shepherd*, the *DaCosta Mortgage* expressly allows entry by the lender or its agent(s) after a breach by the mortgagor to do "whatever is reasonable or appropriate to protect the Lender's interest . . . including protecting . . . and securing and/or repairing" the subject property. **Exhibit H**, ¶ 9. "Securing" is further defined to include changing the locks. *Id.*

Since Rhode Island is a title-theory state, any post-default entry by Defendants could not have constituted a trespass as set forth in *Sood*, *Babcock*, *In re Sharpe*, *Shepherd*, *Bradley*, and the other authorities cited above.[13] Because Defendants unquestionably had a right to possession

---

[13] Even in a *lien-theory* state, a mortgagor cannot maintain an action for trespass or ejectment against a mortgagee in possession under a void, invalid, or irregular foreclosure, at least not without the payment or tender of the amount due on the mortgage debt. *See Restatement*

of the property at the time of the alleged trespass, including under the express terms of the *Dacosta Mortgag*e, Plaintiffs' allegations cannot support a claim for trespass under Rhode Island law irrespective of Plaintiffs' claims regarding the validity of the foreclosure.  Accordingly, Count IV for trespass should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, the *Complaint* should be dismissed in its entirety, with prejudice.

Respectfully submitted,

NATIONSTAR MORTGAGE LLC
and FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

By their Attorneys,

/s/ Joseph A. Farside, Jr.
Joseph A. Farside, Jr. (#7559)
Benjamin R. Davis (#8260)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903-2499
401-274-9200
401-276-6611 (fax)
joseph.farside@lockelord.com
benjamin.davis@lockelord.com

Donald E. Frechette
LOCKE LORD LLP
20 Church Street, 20th Floor
Hartford, CT  06103
Telephone:  860-525-5065
Facsimile:   860-527-4198
donald.frechette@lockelord.com
Admitted *pro hac vice*

DATED: April 20, 2016

---

*(Third) of Property-Security (Mortgages)* § 4.1 (1997); 55 *Am. Jur.* 2d *Mortgages* § 760 (2016).

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on the 20th day of April, 2016, this document, filed through the ECF system, was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies were sent to those indicated as non-registered participants.

<u>/s/ Joseph A. Farside, Jr.      </u>

25